SUZANNE BOBKA, Plaintiff-Appellant, *v.* COOK COUNTY HOSPITAL *et al.*, Defendants.—(MORNING PRIDE MANUFACTURING COMPANY, Defendant-Appellee.)

First District (4th Division)     No. 80-862

Opinion filed June 11, 1981.—Rehearing denied July 14, 1981.

Susan E. Loggans & Associates, of Chicago (Susan E. Loggans and Margaret M. O'Leary, of counsel), for appellant.

Jacobs, Williams and Montgomery, Ltd., of Chicago (Barry L. Kroll and Tim J. Harrington, Jr., of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Suzanne Bobka, initiated suit in the circuit court of Cook County on September 27, 1979, against defendant Morning Pride Manufacturing Company (hereafter Morning Pride). She claimed to have suffered damages resulting from a negligently performed skin graft donation. On December 5, 1979, defendant Morning Pride filed its motion pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 45) for dismissal of count III of plaintiff's complaint for failure to state a cause of action. Count III alleged that as a proximate result of the unreasonably dangerous conditions of the protective fire clothing manufactured by Morning Pride, Robert C. Bobka sustained injuries which necessitated skin grafts from plaintiff, resulting in injuries to her of a personal and pecuniary nature. From the trial court's granting of Morning Pride's motion to dismiss, plaintiff appeals, contending a good cause of action was stated against Morning Pride.

We affirm.

On July 22, 1979, Robert C. Bobka, a fireman, participated in a drill instruction in the village of Itasca, Illinois. During the course of this instruction, an oil storage tank exploded, inflicting injuries to Robert.

Robert was wearing "protective fire clothing" manufactured by defendant Morning Pride. Robert suffered severe burns allegedly due to the defective condition of the protective fire clothing.

Plaintiff, Robert's only sibling, was requested by the doctors to donate large segments of her skin for Robert's grafts. She consented. Skin grafts, of the type accomplished here, usually result in permanent discoloration and scarring of the donor site. Plaintiff's suit against defendant Morning Pride is asserted under a theory of strict liability in tort for injuries received by plaintiff while undergoing the skin graft procedure.

Plaintiff contends the trial court in dismissing count III of her complaint erred by (1) considering matters extraneous and unsupported by the complaint; (2) concluding plaintiff's count III failed to allege facts sufficient to assert a duty owed by defendant Morning Pride; and (3) determining the foreseeability issue.

In determining the legal sufficiency of a complaint, on a motion to dismiss, the trial court, as well as this court, is required to accept all well-pleaded facts as true and then determine whether the allegations of the complaint, when interpreted in a light most favorable to plaintiff, are sufficient to state a cause of action against defendant. (*Rinck v. Palos Hills Consolidated High School District No. 230* (1979), 82 Ill. App. 3d 856, 863, 403 N.E.2d 470, 474.) Further, a cause of action is properly dismissed on the pleadings where it clearly appears that no set of facts can be proved which will entitle the plaintiff to relief. *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 310 N.E.2d 1.

Plaintiff asserts that count III states a valid cause of action in strict liability against defendant Morning Pride. Further, plaintiff asks that this court extend the strict liability doctrine to include injuries sustained by a third party that did not result directly from a defective condition of the manufactured product.

The three necessary elements needed to properly state a good cause of action in strict products liability are (1) that the injury resulted from a defective condition of the product, (2) that the defective condition made the product unreasonably dangerous, and (3) that the defective condition existed at the time the manufactured product left the manufacturer's control (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623, 210 N.E.2d 183, 188; see also Restatement (Second) of Torts §402A (1965).) We note at the outset that the facts as stated in count III of plaintiff's complaint do not meet the requirement set forth as to the first necessary element.

A majority of courts, when considering the question of recovery in a strict-tort-liability action by persons other than those for whose use the product was intended, have found the terms, "bystander" or "innocent bystander" a convenient means of categorizing an additional group of persons for whose injuries recovery may be allowed. (*Winnett v. Winnett*

(1974), 57 Ill. 2d 7, 10, 310 N.E.2d 1, 3.) However, Illinois courts follow the rule enunciated in *Winnett* that the liability of a manufacturer properly encompasses only those individuals to whom injury from a defective product may reasonably be foreseeable, and only in those situations where the product is being used for the purposes for which it was intended or for which it is *reasonably foreseeable* that it may be used. (*Winnett*, at 11.) The *Winnett* court stated that "[a]ny other approach to the problem results in making the manufacturer and those in the chain of product distribution virtual insurers of the product, a position rejected by this court in *Suvada*." *Winnett*, 57 Ill. 2d 7, 11, 310 N.E.2d 1, 4.

The cases that allowed recovery for injuries to persons for whose use the product was not intended based their decision on whether the injuries were *reasonably foreseeable*. (*Winnett*, at 11.) Thus, it is held that injury to other vehicles, their occupants and pedestrians is the foreseeable result of defective steering mechanisms, transmissions, etc. (*Winnett*, at 11; see *Elmore v. American Motors Corp.* (1969), 70 Cal. 2d 578, 451 P.2d 84, 75 Cal. Rptr. 652; *Mitchell v. Miller* (Super. Ct. 1965), 26 Conn. Supp. 142, 214 A.2d 694.) Likewise, it is foreseeable that a defective shell will cause a shotgun barrel to explode and injure persons standing nearby, and recovery against the manufacturer of the shell should accordingly be allowed. *Winnett*, at 12; see *Piercefield v. Remington Arms Co.* (1965), 375 Mich. 85, 133 N.W.2d 129.

Whether plaintiff here is an individual who is entitled to the protections afforded by the concepts of strict tort liability depends upon whether it can be fairly said that a manufacturer could reasonably be expected to foresee, and be responsible for, injuries to persons who, after a burn injury to another person resulting from a defect in the manufacturer's product, voluntarily submit to a skin donation for the treatment of the burned person.

> "A foreseeability test, however, is not intended to bring within the scope of the defendant's liability every injury that might possibly occur. 'In a sense, in retrospect almost nothing is entirely unforeseeable.' [Citation.] Foreseeability means that which it is *objectively reasonable* to expect, not merely what might conceivably occur." *Winnett v. Winnett* (1974), 57 Ill. 7, 12-13, 310 N.E.2d 1, 4-5.

Questions of foreseeability are ordinarily for a jury to resolve. But, where the facts alleged in a complaint on their face demonstrate that the plaintiff would never be entitled to recover, that complaint is properly dismissed. (*Winnett*, at 13.) Such is the case before us. It cannot, in our judgment, fairly be said that a manufacturer should reasonably foresee that he would be liable to a third party who voluntarily submitted to skin graft surgery to aid the person injured by his product. It is not objectively

reasonable to expect such an event to occur and, importantly, there was no injury to plaintiff caused by the defective product itself.

Under the facts set forth in count III, we cannot find the applicability of the doctrine of strict products liability. We hold that the trial court properly dismissed count III of plaintiff's complaint.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LINN and JIGANTI, JJ., concur.