HENRY HUBBARD *et al.*, Plaintiffs-Appellants, v. CHICAGO HOUSING
AUTHORITY, Defendant-Appellee.

First District (1st Division)   No. 84—1954

Opinion filed November 25, 1985.

Kinoy, Taren, Geraghty & Potter, of Chicago (James R. Potter, of counsel), for appellants.

Orner, Wasserman & Moore, Ltd., of Chicago (Norton Wasserman and Thomas J. Branit, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs, Henry Hubbard and Mary Hubbard, appeal from an order of the trial court dismissing with prejudice their amended complaint for failure to state a cause of action. Plaintiffs had filed a three-count amended complaint alleging that Henry Hubbard was injured when he came into contact with a hot steam pipe located in his apartment which was owned by the defendant, Chicago Housing Authority. On appeal, plaintiffs contend that the trial court erred in dismissing their complaint since they properly pled a cause of action both in negligence and strict products liability.

Count I of plaintiffs' amended complaint sounded in negligence and alleged common law liability as well as violations of both a municipal ordinance designed to protect tenants and a special covenant in plaintiffs' lease to maintain the heating facilities in a safe condition. Count II of the amended complaint was based in strict products liability in tort and alleged that defendant's heating system was defective in design and construction and was improperly maintained by the lessor. Count III of the amended complaint alleged loss of consortium by plaintiff, Mary Hubbard.

In determining the legal sufficiency of a complaint on a motion to dismiss, the trial court is required to accept all well-pleaded facts as true and then determine whether the allegations of the com-

plaint, when interpreted in a light most favorable to plaintiff, are sufficient to state a cause of action against defendant. (*Rinck v. Palos Hills Consolidated High School District No. 230* (1979), 82 Ill. App. 3d 856, 403 N.E.2d 470.) A cause of action is properly dismissed on the pleadings only where it clearly appears that no set of facts can be proved which will entitle the plaintiff to relief. *Winnett v. Winnett* (1974), 57 Ill. 2d 7, 310 N.E.2d 1.

In light of these principles we shall examine plaintiffs' complaint here. Initially, the complaint alleged that defendants were negligent in placing the steam pipes along the surface of the apartment walls where tenants would come into contact with the pipes and where they were not covered with any type of insulating material. The plaintiffs do not point to any defect in the steam pipes, but rather complain that defendant was negligent in leaving hot steam pipes exposed.

■ It is well settled that a landlord is not liable for injuries sustained by a tenant on premises leased to the tenant. (*Thorson v. Aronson* (1970), 122 Ill. App. 2d 156, 258 N.E.2d 33.) "In multiple-unit dwellings, a landlord owes his tenants a duty of reasonable care in the management and maintenance of areas open for use by all tenants, and not part of the premises occupied by one tenant." *Webster v. Heim* (1980), 80 Ill. App. 3d 315, 316, 399 N.E.2d 690, 691.

■ The steam pipes in the instant case are similar to the steam radiator involved in *Dargie v. East End Bolders Club* (1952), 346 Ill. App. 480, 105 N.E.2d 537. There, the plaintiff was a three-year-old child who was burned by an exposed radiator in a restroom in defendant's club. Plaintiff alleged that defendant was negligent in failing to cover the radiator with a guard. This court held that leaving a steam radiator exposed did not constitute negligence since the radiator was being used for the purpose for which it was intended and there was no defect in the radiator. (346 Ill. App. 480, 490, 105 N.E.2d 537, 542.) Similarly, in the instant case, we do not believe plaintiff has stated an action for common law negligence. Plaintiffs do not point to any defects in the steam pipes. The steam pipes were simply hot and exposed, but not defective. Plaintiff was free to install safety guards around the steam pipes, but the lack of guards does not form the basis of liability on the part of defendant.

■ Plaintiffs' complaint further alleged that defendants were negligent in providing steam heat through exposed, hot steam pipes in violation of a city of Chicago municipal ordinance. The ordinance relied on by plaintiffs requires apartments to "have heating facilities which are capable of safely and adequately heating all habitable rooms." (City of Chicago, Municipal Code, ch. 78, par. 78—38.) Plain-

tiffs do not specify in their complaint how defendant violated the ordinance. Courts will give ordinances a reasonable construction to see if a violation is well pled. (*Gula v. Gawel* (1966), 71 Ill. App. 2d 174, 218 N.E.2d 42.) To interpret the ordinance to find a violation, as plaintiffs suggest, would prevent the use of any heating unit which would be capable of causing burns through prolonged contact. Such a construction of this ordinance would impose too heavy a burden on the defendant here, as well as on all landlords.

■ Likewise, we find no merit in the allegation in plaintiffs' complaint that defendants breached the covenant to repair in plaintiffs' lease. Plaintiffs have not alleged that the steam pipe was in need of repair. Plaintiffs have simply alleged that the steam pipes which injured the plaintiff were hot. The function of steam pipes, however, is to radiate heat. Most household fixtures are capable of causing injury under certain conditions. (See *Bonamie v. Welsh* (1981), 95 Ill. App. 3d 349, 420 N.E.2d 243.) We, therefore, find that any breach of the covenant to repair is not well pled in plaintiffs' complaint.

■ The second count of plaintiffs' complaint alleged a cause of action in strict products liability for the injuries sustained by plaintiff as a result of contact with the hot steam pipe. To state a cause of action in strict liability, a complaint must allege that the injury resulted from a defective condition of the product, that the defective condition of the product is unreasonably dangerous, and that the defective condition existed at the time the product left the manufacturer's control. *Bobka v. Cook County Hospital* (1981), 97 Ill. App. 3d 351, 422 N.E.2d 999.

Thus, our initial inquiry is whether the steam pipes of which plaintiffs complain are a product. In *Walker v. Shell Chemical, Inc.* (1981), 101 Ill. App. 3d 880, 428 N.E.2d 943, plaintiff alleged that a guardrail which was being used in the construction of a building was a defective product. In addressing the issue of what constitutes a product, the court held that "if the guardrail *** was actually a component and indivisible part of the entire building structure, it may not be considered as a product." (101 Ill. App. 3d 880, 883, 428 N.E.2d 943, 946.) In reaching its result, the *Walker* court summarized earlier decisions which it relied upon in reaching its result: *Lowrie v. City of Evanston* (1977), 50 Ill. App. 3d 376, 365 N.E.2d 923 (in a wrongful death action where injuries resulted from a fall from a parking garage, the parking garage building was held not to be a product); *Immergluck v. Ridgeview House, Inc.* (1977), 53 Ill. App. 3d 472, 368 N.E.2d 803 (a sheltered care facility was held not to be a product to sustain a cause of action for injuries sustained while housed in the facility); *Heller v.*

*Cadral Corp.* (1980), 84 Ill. App. 3d 677, 406 N.E.2d 88 (in an action for injuries based on alleged construction defects in condominium by owner, condominium held not to be a product). Thus, this court has consistently held that buildings are not a product for the purpose of strict liability. These decisions find support for their result in the policy considerations which impel the courts not to allow an undue expansion of strict liability concepts. *Walker v. Shell chemical, Inc.* (1981), 101 Ill. App. 3d 880, 428 N.E.2d 943; *Lowrie v. City of Evanston* (1977), 50 Ill. App. 3d 376, 365 N.E.2d 923; *Immergluck v. Ridgeview House, Inc.* (1977), 53 Ill. App. 3d 472, 368 N.E.2d 803.

Plaintiffs argue that the steam pipes which injured plaintiff are a product for purposes of strict liability and rely on *Boddie v. Litton Unit Handling Systems* (1983), 118 Ill. App. 3d 520, 455 N.E.2d 142. In *Boddie,* the court found that a chain and gear drive mechanism which was a part of a conveyor system installed in a United States Post Office mail center was a product. Defendant there had argued that the mechanism was not a product because it was a fixture in the building in which it was housed. The court found the law of fixtures to be inapplicable to a determination of what constitutes a product for purposes of strict liability, and distinguished the *Walker* case, as follows:

> "Our holding in *Walker* should not be read so broadly as to incorporate the law of fixtures into products liability law. What items are to be deemed products must be based on the underlying policies for strict liability in tort to which the law relating to fixtures is only tangentially relevant. *Walker* imposes a limitation of the application of strict liability only with regard to those items which are an indivisible part of the building structure itself, such as the bricks, supporting beams and railings. Such items are significantly different than a conveyor system housed in a building since they do nôt have an indivisible identity prior to installation but are rather indivisible component parts of the building itself." 118 Ill. App. 3d 520, 529, 455 N.E.2d 142, 149.

In the instant case, defendants do not argue that the steam pipes are not· products because they are fixtures. Rather, defendants contend, in reliance on *Walker,* that the steam pipes are an indivisible component part of the building and, as such, they are not products. We agree with this proposition. Unlike the conveyor in *Boddie,* the steam pipes here were an integral part of the apartment in which plaintiffs lived. The pipes ran through the walls, connecting with other pipes, and eventually to the central heating apparatus. As with

all steam pipes which form part of a steam heating facility, the steam pipes were not easily severable from the building.

■ Plaintiffs further alleged in their complaint that the steam pipes at issue were defective. Products are found to be defective which are dangerous because they fail to perform in the manner reasonably expected in light of their nature and intended function. (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368.) We do not believe that hot steam pipes are defective merely because they are hot. Being hot is a common propensity and inherent property of steam pipes and is to be reasonably expected in light of their nature and intended function.

From the above discussion, we conclude, after reviewing the allegations of plaintiffs' complaint in a light most favorable to plaintiffs, that plaintiffs have failed to state a cause of action either in negligence or in strict products liability. The trial court, therefore, properly dismissed the amended complaint.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and O'CONNOR, JJ., concur.